**UNITED STATES DISTRICT COURT**
**OF THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SAMUEL GALLEZZO** and **ROBERT WINSKAS**, on behalf of themselves and those similarly situated, | ) ) ) | |
| | ) | Case no: 1:17-cv-00475 |
| Plaintiffs, | ) | |
| | ) | Hon. |
| v. | ) | |
| | ) | |
| **SUNSET EXPRESS, LLC** and **MIRALEM BESLAGIC**, an individual, | ) ) | |
| | ) | |
| Defendants. | ) | |

---

### PLAINTIFFS' INDIVIDUAL, COLLECTIVE, AND CLASS COMPLAINT

Plaintiffs Samuel Gallezzo and Robert Winskas (hereinafter "Named Plaintiffs"),

individually and on behalf of themselves and those similarly situated, by and through

undersigned counsel, hereby complain as follows against Defendants Sunset Express, LLC and

Miralem Beslagic (hereinafter collectively referred to as "Defendants").

### INTRODUCTION

1.      Named Plaintiffs have initiated the instant action to redress Defendants' violations

of the Fair Labor Standards Act ("FLSA").  Named Plaintiffs assert that Defendants erroneously

designated Named Plaintiffs and those similarly situated as independent contractors and failed to

pay full and proper wages for all hours worked.  Specifically, Defendants failed to pay Named

Plaintiffs and those similarly situated proper minimum wages and required Named Plaintiffs and

those similarly situated to cover the costs of Defendants' business, thereby further reducing the

wages of Named Plaintiffs and those similarly situated below the minimum wage.

2.      Named Plaintiffs have initiated the instant action to redress Defendants' violations of Michigan's Workforce Opportunity Wage Act ("MWOWA"), M.C.L.A. § 408.411, *et seq.* Named Plaintiffs assert that Defendants erroneously designated Named Plaintiffs and those similarly situated as independent contractors, failed to pay proper wages for all hours worked, and unlawfully deducted from and withheld portions of wages of Named Plaintiffs' and those similarly situated.  Specifically, Defendants failed to pay Named Plaintiffs and those similarly situated proper minimum and overtime wages and required Named Plaintiffs and those similarly situated to cover the costs of Defendants' business, thereby further reducing the wages of Named Plaintiffs and those similarly situated below the minimum wage, in violation of MWOWA and the FLSA.  M.C.L.A. § 408.411, *et seq.*

## JURISDICTION AND VENUE

3.      The foregoing paragraphs are incorporated herein as if set forth in full.

4.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims herein arise under laws of the United States, the FLSA, 29 U.S.C. § 201, *et seq.*  This Court has supplemental jurisdiction over Named Plaintiffs' state law claims because those claims arise out of the same nucleus of operative fact as the FLSA claims.

5.      This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this jurisdictional district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice.

6.      Venue is properly laid in this judicial district pursuant to 29 U.S.C. § 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and

because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**PARTIES**

7.      The foregoing paragraphs are incorporated herein as if set forth in full.

8.      Named Plaintiff Samuel Gallezzo is an adult individual who resides in Sequin, Texas, and performs work in the State of Michigan.

9.      Named Plaintiff Samuel Gallezzo worked as a truck driver for Defendants from approximately November 3, 2016 to December 16, 2016.

10.     A signed Consent to Sue document for Named Plaintiff Samuel Gallezzo is attached hereto as **Exhibit 1**.

11.     Named Plaintiff Robert Winskas is an adult individual who resides in Fruitport, Michigan, and performs work in the State of Michigan.

12.     Named Plaintiff Robert Winskas worked as a truck driver for Defendants from approximately August 26, 2016 to November 11, 2016.

13.     A signed Consent to Sue document for Named Plaintiff Robert Winskas is attached hereto as **Exhibit 2**.

14.     Defendant Sunset Express, LLC is a Michigan Corporation with its principal place of business in the State of Michigan.

15.     Defendant Sunset Express, LLC is a truckload carrier engaged in the hauling and delivery of freight across the United States.

16.     Defendant Miralem Beslagic ("Beslagic") is an individual who is a resident of the County of Kent, State of Michigan.

17. Upon information, knowledge, and belief, Defendant Miralem Beslagic is the owner of Defendant Sunset Express, LLC.

18. Upon information, knowledge, and belief, Defendant Miralem Beslagic is responsible for the day to day operation of the business and was directly involved in the decisions regarding the work, hiring, firing, classification, scheduling, and compensation of Named Plaintiffs and other employees of Defendant Sunset Express, LLC.

19. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

20. In addition to bringing this action individually, Named Plaintiffs bring this action for violations of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of current and former long-haul truck drivers ("Truck Drivers") of Defendants who were classified as independent contractors, subject to Defendants' wage deduction policies, and paid less than the applicable minimum wage for all hours worked at any point in the three years preceding the date the instant action was initiated (the members of this putative class will be referred to as "Collective Plaintiffs").

21. Named Plaintiffs and Collective Plaintiffs are similarly situated, have substantially similar job duties, have substantially similar pay provisions, and are all subject to Defendants' unlawful policies and practices as discussed *infra*.

22. There are numerous similarly situated current and former Truck Drivers that work or worked for Defendants who were compensated improperly for all hours worked in violation of

the FLSA and who would benefit from the issuance of a Court Supervised Notice of the instant lawsuit and the opportunity to join in the present lawsuit.

23.     Similarly situated employees are known to Defendants, are readily identifiable by Defendants, and can be located through Defendants' records.

24.     Therefore, Named Plaintiffs should be permitted to bring this action as a collective action for and on behalf of themselves and those employees similarly situated, pursuant to the "opt-in" provisions of the FLSA, 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

25.     The foregoing paragraphs are incorporated herein as if set forth in full.

26.     Named Plaintiffs bring their claims asserting violations of the Michigan Workforce Opportunity Wage Act ("MWOWA") as a class action pursuant to Rules 23(b)(1), 23(b)(2), 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and those similarly situated.  Those similarly situated consist of all current and former long-haul truck drivers ("Truck Drivers") of Defendants who were classified as independent contractors, subject to Defendants' wage deduction policies, and paid less than the applicable minimum and overtime wages for all hours worked at any point in the three years preceding the date the instant action was initiated (the members of this putative class will be referred to as "Class Plaintiffs").

27.     The class is so numerous that joinder of all class members, whether required or permitted, is impracticable.  Named Plaintiffs do not know the exact size of the class because such information is in the exclusive control of Defendants.  Nonetheless, upon information and belief, there are at least 30 potential class members.

28.     Named Plaintiffs' claims are typical of the claims of the members of the class because Named Plaintiffs, like all class members, were employees of Defendants who were paid

less than minimum and overtime wages for all hours worked as a result of Defendants' intentional misclassification of Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs as independent contractors, failure to keep time records for the Truck Drivers, failure to consider the hours worked by the Truck Drivers when determining pay, and implementation of illegal wage deduction policies

29.     Named Plaintiffs will fairly and adequately protect the interests of Class Plaintiffs because Named Plaintiffs' interests are coincident with, and not antagonistic to, those of the class.  Named Plaintiffs have retained counsel with experience in the prosecution of such claims involving employee wages.

30.     Defendants have acted and refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole insofar as Defendants have applied consistent unlawful wage deduction policies to the entire class and have failed to pay proper minimum and overtime wages to Named Plaintiffs and Class Plaintiffs.

31.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action.  The class will be easily identifiable from Defendants' records.

32.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Such treatment will allow all similarly situated individuals to prosecute their common claims in a single forum simultaneously.  Prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the Defendants.  Furthermore, the amount at stake for individual class

members, though substantial, is not great enough to enable the individual class members to maintain separate actions against Defendants.

33.     Questions of law and fact that are common to the members of the class predominate over questions that affect only individual members of the class.  Among the questions of law and fact that are common to the class is whether Defendants unlawfully deducted/withheld wages from Plaintiffs, whether Defendants paid Plaintiffs below the minimum wage, and whether Defendants paid Plaintiffs below one-and-one-half times the applicable minimum wage for hours worked beyond 40 per workweek.

## FACTUAL BACKGROUND

### Facts Common to the Truck Drivers for Defendants

34.     The foregoing paragraphs are incorporated herein as if set forth in full.

35.     At all relevant times, Defendants were engaged in the business of operating a trucking business with a principal office in Grand Rapids, Michigan.

36.     Upon information, knowledge, and belief, Defendants owned and maintained a fleet of more than 30 trucks that were used to haul and deliver freight throughout the United States at all relevant times.

37.     In the ordinary course of business, Defendants hired Truck Drivers to haul and deliver freight on routes throughout the country pursuant to Defendants' instruction and oversight.

38.     The Truck Drivers utilized trucks owned by Defendants while working for Defendants.

39.     The Truck Drivers were frequently sent on continuous tours of duty of Defendants that would last up to thirty days or more.

40.     The Truck Drivers generally spent over forty hours per week driving while on their respective tours of duty.

41.     While on their respective tours of duty for Defendants, the Truck Drivers also spent a considerable amount of time performing work for Defendants' while they were not driving, such as:

    a.  Completing and sending bills of lading or proof of delivery documents to Defendants or Defendants' brokers;

    b.  Waiting extended periods of time for their respective trucks and/or trailers to be loaded or unloaded after arriving at a destination;

    c.  Waiting extended periods of time for new loads to become available for pickup;

    d.  Waiting extended periods of time for dispatching instructions from Defendants;

    e.  Ensuring their respective trucks were properly cleaned and maintained;

    f.  Coordinating repair or maintenance work for their respective trucks and trailers, if necessary;

    g.  Performing pre- and post-trip inspections of their respective trucks and trailers;

    h.  Ensuring that the weight of their respective trucks and trailers was accurate and that all axles were properly leveled out before a trip;

    i.  Ensuring compliance with Department of Transportation regulations; and

    j.  Ensuring that Defendants' trucks, trailers and equipment were taken care of and safe at all times.

42.     While on their respective tours of duty, the Truck Drivers were unable to go home and were required to remain on or near their respective trucks.

43. The trucks utilized by the Truck Drivers were equipped with sleeper berths in which the Truck Drivers were expected to rest or sleep in while on their respective tours of duty.

44. Even when they were not driving, waiting for a load pickup, waiting to drop off a load, or waiting for instruction from a dispatcher, the Truck Drivers were responsible for taking care of Defendants' trucks and equipment or waiting to be engaged by Defendants to perform other work.

45. Defendants classified and paid the Truck Drivers as independent contractors. By way of example, Named Plaintiffs Samuel Gallezzo and Robert Winskas were required to sign Truck Driver Subcontractor Agreements (**Exhibit 3** and **Exhibit 4**, respectively) that defined the terms of their employment with Defendants, including their classification as independent contractors.

46. Upon information and belief, Defendants paid the Truck Drivers on a weekly basis. Specifically, Named Plaintiffs Samuel Gallezzo and Robert Winskas were paid on a weekly basis per their respective Truck Driver Subcontractor Agreements (**Exhibit 3** and **Exhibit 4**, respectively).

47. Upon information and belief, Defendants paid the Truck Drivers on a per-mile basis. Specifically, Named Plaintiffs Samuel Gallezzo and Robert Winskas were paid on a per-mile basis per their respective Truck Driver Subcontractor Agreements (**Exhibit 3** and **Exhibit 4**, respectively).

48. Upon information and belief, Defendants imposed numerous deductions from the Truck Drivers' weekly paychecks. Specifically, the Truck Driver Subcontractor Agreements signed by Named Plaintiffs Samuel Gallezzo and Robert Winskas (**Exhibit 3** and **Exhibit 4**, respectively), purportedly allowed Defendants to impose:

a. Deductions to satisfy the required "escrow" retainage;

b. Deductions related to vehicle and equipment damage;

c. Deductions related to the cost associated with Defendants' recovery of abandoned trucks or equipment;

d. Deductions to pay for the specialized log books that Defendants required Named Plaintiffs to use;

e. Deductions for "out of route" mileage;

f. Deductions for late pickup or delivery;

g. Deductions for failing to "call in" upon arriving at a destination;

h. Deductions for unpaid tolls;

i. Deductions for to USDOT violations;

j. Deductions for to traffic violations;

k. Deductions equal to the value of any stolen fuel;

l. Deductions for operating an overweight vehicle;

m. Deductions for a truck being deemed "out of service"; and

n. Monthly deductions for occupational insurance.

49. After these deductions were taken, Truck Drivers generally received between $300 and $800 per workweek while working for Defendants.

50. The Truck Drivers generally spent about forty hours per week driving their respective trucks and anywhere from twenty to over one-hundred hours performing non-driving work or remaining on call for Defendants.

51. Defendants frequently paid the Truck Drivers less than the federal minimum wage rate of $7.25 per hour for all of the hours they actually worked in a given workweek.

52.     Further, Defendants never paid the Truck Drivers an overtime premium for all hours worked over forty per workweek.

53.     Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs were all Truck Drivers for Defendants and, upon information, knowledge, and belief, share the preceding terms and conditions of working for Defendants in common.

**Defendants Misclassified Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs as Independent Contractors**

54.     The foregoing paragraphs are incorporated herein as if set forth in full.

55.     As alleged above, Defendants classified the Truck Drivers, including Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs, as independent contractors.

56.     However, Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs were not independent contractors of Defendants, rather employees as defined by the FLSA and MWOWA.

57.     At all relevant times, Defendants directly or indirectly exercised significant control over the wages, hours, and working conditions of Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs.

58.     Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs incurred financial loss, injury, and damage as a result of Defendants' business practice of misclassifying them as independent contractors, failing to pay them a minimum wage, and subjecting them to improper and unlawful pay deductions.

59.     Defendants' misclassification of Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs as independent contractors was specifically intended to enhance Defendants' profit margins at the expense of all Plaintiffs as follows: (1) failing to proper minimum wages in violation of FLSA; (2) failing to pay proper minimum and overtime wages in violation of MWOWA; (3) improperly reducing pay to Named Plaintiffs through unlawful deductions; and

(4) adopting and implementing employment policies which violate the FLSA and state wage and hour laws.

60.     Defendants' misclassification of Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs was willful.

61.     Defendants knew or should have known that it was improper to classify Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs as independent contractors.

62.     Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs cannot and could not "elect" to be treated as employees or independent contractors under threat of adverse treatment. Nor could they have agreed to be paid less than the minimum wage.  Despite this, Defendants unfairly, unlawfully, fraudulently, and unconscionably attempted to coerce Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs waive their statutory rights and elect to be treated as independent contractors.

63.     Any contract which attempts to have Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs waive, limit, or abridge their statutory rights to be treated as an employee under the FLSA or other applicable wage and hour laws is void, unenforceable, unconscionable, and contrary to public policy.

64.     The determining factor as to whether Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs are employees or independent contractors under FLSA is not the workers' election, subjective intent, or any contract.  Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test.  See Rutherford Food Corp. v. McComb, 331 U.S. 722, 727 (1947).  Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for him or herself and truly independent or, rather, is economically dependent upon finding employment in others.

65.     Under the applicable test, courts utilize the following factors to determine economic dependence and employment status: (1) the degree of control exercised by the alleged employer; (2) the relative investments of the alleged employer and employee; (3) the degree to which the employee's opportunity for profit and loss is determined by the employer; (4) the skill and initiative required in performing the job; (5) the permanency of the relationship; and (6) the degree to which the alleged employee's tasks are integral to the employer's business.  Id.

66.     The totality of circumstances surrounding the employment relationship between Defendants and Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs establishes economic dependence by Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs on Defendants and employee status.  Here, Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs are not in business for themselves and truly independent, but rather are economically dependent upon their employment with Defendants.  Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs are not engaged in occupations or businesses distinct from that of Defendants.  To the contrary, the Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs are the basis for Defendants' business.  Defendants obtain customers who are in need long-haul trucking services and Defendants provide the workers and equipment that provide the long-haul trucking services on behalf of Defendants.  Defendants retain pervasive control over the business operations as a whole.

**A.  Degree of Control Exercised by Defendants**

67.     Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs do not exert control over any meaningful part of Defendants' business operations and do not stand as a separate economic entity from Defendants.  Defendants exercise control over all aspects of the working relationship with Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs.

68.    Named Plaintiffs', Collective Plaintiffs', and Class Plaintiffs' economic status is inextricably linked to conditions over which Defendants have complete control, including without limitation advertising and promotion, business and financial relationships with customers, business and financial relationships with insurers, and customer volume.

69.    Defendants exercise the following significant control over the work conditions of Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs:

a.    Defendants required Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs to utilize trucks and equipment owned and maintained by Defendants;

b.    Defendants did not allow Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs to use the trucks provided by Defendants for any work other than that assigned by Defendants;

c.    Defendants required Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs to travel on continuous tours of duty around the United States that would last up to or over thirty days;

d.    Defendants required Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs to routinely work in excess of 70 hours per week;

e.    Defendants only paid Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs on a cost per mile basis;

f.    Defendants did not allow Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs to negotiate the terms of their pay or employment with Defendants;

g.    Defendants subjected Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs to improper pay deductions, such as those described above;

h. Defendants directed Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs with respect to load pickups, drop-offs, routing, and timing;

i. Defendants required Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs to purchase and use Defendants' log books;

j. Defendants required Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs to use forms and invoices Defendants provided;

k. Defendants required Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs to deliver to Defendants all invoices and customer service reports within a set period of time in order to avoid fines, deductions, or non-payment of earned wages;

**B. Facts Establishing No Skill or Initiative of a Person in Business for Himself**

70. Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs did not exercise the skill and initiative of a person in business for herself or himself.

71. Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs were not required to have any specialized or unusual skills to perform their job. The skills utilized in truck driving are commensurate with those exercised by ordinary people.

72. Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs did not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of an independent contractor: they owned no enterprise, nor did they maintain a separate business structure or facility.

73. Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs had no control over customers, nor did they actively participate in any efforts to increase Defendants' customer base or profit, or to improve business in any capacity.

74.     Defendants did not permit Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs to hire or subcontract other qualified individuals to provide trucking services to customers, thereby increasing their revenue, as an independent contractor in business for himself would have the authority to do.

**C.  Facts Establishing Relative Investment**

75.     Named Plaintiffs', Collective Plaintiffs', and Class Plaintiffs' respective relative investments were minor when compared to the investment made by Defendants.

76.     Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs made no financial investment in Defendants' trucks, equipment, facilities, advertising, maintenance, staffing, and contractual relationships.  All capital investment and risk belongs to Defendants.

77.     Absent Defendants' investment and provision of the business, the truck drivers would not earn anything.

**D.  Facts Establishing Opportunity for Profit and Loss**

78.     Defendants managed all aspects of the business operations, including without limitation attracting investors, establishing business and customer relationships, purchasing and maintaining trucks and equipment, maintaining the premises, establishing the hours of operation, coordinating advertising, and hiring and controlling the staff.  Defendants provided all necessary capital to open and operate the business.

79.     Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs had no responsibility for any aspect of Defendants' ongoing business risk.

**E.  Facts Establishing Permanency**

80.     Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs worked for Defendants as truck drivers during the applicable statutory period.

81.     Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs worked every day while on their respective tours of duty.

82.     Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs were never intended to be temporary employees of Defendants.

83.     Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs were hired as long-term employees and generally worked for Defendants until they were fired or quit.

**F.  Facts Establishing That Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs Were an Integral Part of Employer's Business**

84.     Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs were critical to Defendants' success.  Defendants' operation is wholly dependent on the truck driving services that Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs provide for Defendants' customers.

85.     The primary "product" or "good" Defendants are in business to sell consists of truck driving and transport services provided by Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs.

86.     Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs are economically dependent on Defendants and subject to significant control by Defendants.

**Defendants' Wage Deduction Policies Were Illegal**

87.     The foregoing paragraphs are incorporated herein as if set forth in full.

88.     Upon information, knowledge and belief, Defendants paid Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs for work performed.

89.     Upon information, knowledge, and belief, paychecks, which were provided to Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs, were processed in Michigan.

90.     Defendants are an "employer" in Michigan under the statutory definition of the MWOWA.

91.     Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs were "employees" under the statutory definition of MWOWA because they were permitted to work by Defendants, an employer, as commercial truck drivers.

92.     As discussed above, Defendants implemented policies whereby they assessed deductions from the wages of Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs.

93.     The deductions made pursuant to Defendants' wage deduction policies were not authorized by law.  M.C.L.A. 408.477.

94.     The deductions made pursuant to Defendants' wage deduction policies were not for the benefit of Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs, but rather Defendants.

95.     Because the deductions made pursuant to Defendants' wage deduction policies were intended for the employer's benefit, Defendants were required to obtain separate written employee authorizations for each wage payment subject to the deduction.  <u>Duffy v. Gainey Transportation Services Inc.</u>, 193 Mich.App. 221, 484 N.W.2d 7 (1992).

96.     Defendants did not obtain separate written employee authorizations for each wage payment subject to the deduction.

97.     Even if Defendants' deductions were properly authorized, authorized wage deductions cannot reduce an employee's gross wages to an amount lower than the applicable state minimum wage rate.  M.C.L.A. 408.477(2).

98. The deductions made pursuant to Defendants' wage deduction policies were not revocable at any time by Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs upon written notice to Defendants.

99. Pursuant to Defendants' wage deduction policies, Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs frequently were denied full and proper wages.

**Defendants Failed Pay Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs Proper Minimum and Overtime Wages for all Hours Worked**

100. The foregoing paragraphs are incorporated herein as if set forth in full.

101. Defendants' misclassification of Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs as independent contractors, failure to keep time records for the Truck Drivers, failure to consider the hours worked by the Truck Drivers when determining pay, and implementation of illegal wage deduction policies regularly caused the wages of Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs to drop below the applicable wages prescribed by the FLSA and MWOWA for all hours worked during a workweek.

102. By way of example, Named Plaintiff Samuel Gallezzo was paid $319 (after deductions) by Defendants for the workweek ending on November 18, 2016. In that workweek, Mr. Gallezzo drove a total of 2,147 miles for Defendants. In his log book, Mr. Gallezzo reported a total of 46.5 hours spent "driving" and "on-duty" for Defendants. Without even considering the numerous additional hours that he spent working for Defendants performing tasks that were not reported as "driving" or "on-duty" in his log book, Defendants paid Mr. Gallezzo at a rate of $6.86 per hour. This constitutes violations of the FLSA and MWOWA.

103. By way of further example, Named Plaintiff Robert Winskas was paid $0 (after deductions) by Defendants for the workweek ending on October 24, 2016. In that workweek, Mr. Winskas drove a total of 2,316 miles for Defendants. In his log book, Mr. Winskas reported

a total of 41 hours spent "driving" and "on-duty" for Defendants. Without even considering the numerous additional hours that Mr. Winskas spent working for Defendants performing tasks that were not reported as "driving" or "on-duty," Defendants paid him at a rate of $0 per hour. This constitutes violations of the FLSA and MWOWA.

## Defendants Violations of the FLSA Were Willful

104.     Defendants deceived Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs into believing that they were not entitled to the protections afforded to those classified as "employees" under the FLSA and MWOWA by misclassifying them as independent contractors.

105.     Defendants knew or should have known that simply classifying Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs as independent contractors and labeling them as such was not sufficient under the law to exempt Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs from the minimum wage and overtime premium provisions of the FLSA and MWOWA.

106.     As it relates to Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs, Defendants failed to post a notice of the FLSA's minimum wage provisions as required by 29 C.F.R § 516.4.

107.     Defendants failed to keep records of the number of hours worked by Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs.

108.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a willful violation of the Act, an employee is entitled to his or her unpaid minimum and/or overtime wages, plus an additional equal amount in liquidated damages, costs, and reasonable attorney's fee.

# COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. §201, *et seq.*
### (Failure to Pay Minimum Wage)
### Named Plaintiffs and Collective Plaintiffs v. Defendants

109. The foregoing paragraphs are incorporated herein as if set forth in full.

110. At all times relevant herein, Defendants were "employers" within the meaning of the FLSA.

111. At all times relevant herein, Named Plaintiffs and Collective Plaintiffs were "employees" within the meaning of the FLSA.

112. The FLSA requires employers, such as Defendants, to minimally compensate employees, such as Named Plaintiff and Collective Plaintiffs, at the federal minimum wage rate for each hour worked.

113. Defendants willfully failed to compensate Named Plaintiffs and Collective Plaintiffs at the federal minimum wage rate for each hour worked.

114. As a result of Defendants' failure to compensate Named Plaintiffs and Collective Plaintiffs at the federal minimum wage rate, Defendants have violated and continue to violate the FLSA.

# COUNT II
## VIOLATION OF MICHIGAN'S PAYMENT OF WAGES AND FRINGE BENEFITS ACT
### (Unlawful Deductions)
### Named Plaintiffs and Class Plaintiffs v. Defendants

115. The foregoing paragraphs are incorporated herein as if set forth in full.

116. At all times relevant herein, Defendants were "employers" of Named Plaintiffs and Class Plaintiffs, who were "employees" of Defendants under state and federal law.

117. At all times relevant herein, Defendants were responsible for paying wages to Named Plaintiffs and Class Plaintiffs.

118.     Defendants violated M.C.L.A. 408.477, by withholding wages for illegal deductions from Named Plaintiffs' and Class Plaintiffs' pay.

119.     Defendants did not act in good faith in unlawfully deducting from Named Plaintiffs' and Class Plaintiffs' wages.

120.     Defendants' unlawful wage deductions resulted in Named Plaintiffs' and Class Plaintiffs' wages dropping below the applicable minimum and overtime wage rates proscribed by state and federal law.

121.     As a result of Defendants' conduct, Named Plaintiffs and Class Plaintiffs have suffered damages.

<u>**COUNT III**</u>
<u>**VIOLATIONS OF MICHIGAN'S WORKFORCE OPPORTUNITY WAGE ACT**</u>
**(Failure to Pay Minimum Wage)**
**Named Plaintiffs and Class Plaintiffs v. Defendants**

122.     The foregoing paragraphs are incorporated herein as if set forth in full.

123.     Michigan's Workforce Opportunity Wage Act ("MWOWA"), makes it unlawful for an employer to pay an employee less than what is prescribed in the statute. M.C.L.A. § 408.411, *et seq.*

124.     Defendants were an "employer" as defined under the MWOWA at all relevant times.

125.     Named Plaintiffs and Class Plaintiffs were "employees" as defined under the MWOWA at all relevant times.

126.     Defendants did not pay Named Plaintiffs and Class Plaintiffs proper minimum wages for all hours worked pursuant to M.C.L. § 408.414a.

127.     MWOWA provides that as a remedy for a violation of the Act an employee is entitled to unpaid back wages and an equal additional amount as liquidated damages together with costs and such reasonable attorney's fees.

128.     Named Plaintiffs and Class Plaintiffs are therefore entitled to their unpaid minimum wages as well as an equal amount as liquidated damages.

129.     Named Plaintiffs and Class Plaintiffs are also entitled to costs and reasonable attorney's fees.

## COUNT IV
## VIOLATIONS OF MICHIGAN'S WORKFORCE OPPORTUNITY WAGE ACT
### (Failure to Pay Overtime Wage Premiums)
### Named Plaintiffs and Class Plaintiffs v.  Defendants

130.     The foregoing paragraphs are incorporated herein as if set forth in full.

131.     Michigan's Workforce Opportunity Wage Act ("MWOWA"), makes it unlawful for an employer to pay an employee less than what is prescribed in the statute. M.C.L.A. § 408.411, *et seq*.

132.     Defendants were an "employer" as defined under the MWOWA at all relevant times.

133.     Named Plaintiffs and Class Plaintiffs were "employees" as defined under the MWOWA at all relevant times.

134.     Defendants regularly suffered or permitted Named Plaintiffs and Class Plaintiffs to work more than forty (40) hours per workweek.

135.     Defendants did not pay Named Plaintiffs and Class Plaintiffs one-and-one-half times his regular hourly rate for the hours worked in excess of forty hours in a workweek as mandated by Michigan law pursuant to M.C.L. § 408.414a.

136.    MWOWA provides that as a remedy for a violation of the Act an employee is entitled to unpaid back wages and an equal additional amount as liquidated damages together with costs and such reasonable attorney's fees.

137.    Named Plaintiffs and Class Plaintiffs are therefore entitled to their unpaid overtime wages as well as an equal amount as liquidated damages.

138.    Named Plaintiffs and Class Plaintiffs are also entitled to costs and reasonable attorney's fees.

## PRAYER FOR RELIEF

THEREFORE, Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs request the following relief:

a.  An Order declaring Defendants willfully violated the FLSA;

b.  An Order granting judgment in favor of Named Plaintiffs and Collective Plaintiffs against Defendants, jointly and severally, and awarding Named Plaintiffs and Collective Plaintiffs the full amount of damages and liquidated damages available to them under the FLSA;

c.  An Order awarding reasonable attorney's fees and costs incurred by Named Plaintiffs and Collective Plaintiffs under the FLSA as provided by statute;

d.  An Order declaring Defendants violated Michigan's Payment of Wages and Fringe Benefits Act by imposing illegal deductions on the wages of Named Plaintiffs and Class Plaintiffs;

e.  An Order declaring Defendants violated the MWOWA by failing to pay Named Plaintiffs and Class Plaintiffs a proper minimum wage for all hours worked;

f.   An Order declaring Defendants violated the MWOWA by failing to pay Named Plaintiffs and Class Plaintiffs a proper overtime wage for all hours worked over forty (40) per workweek;

g.   An Order granting judgment in favor of Named Plaintiffs and Class Plaintiffs against Defendants, jointly and severally, and awarding Named Plaintiffs and Class Plaintiffs the full amount of damages and liquidated damages available to them under MWOWA;

h.   An Order awarding reasonable attorney's fees and costs incurred by Named Plaintiffs and Class Plaintiffs under MWOWA as provided by statute;

i.   An Order declaring that Defendants are to be prohibited from continuing to maintain their policies, practices or customs in violation of state laws and principles of equity; and

j.   An Order awarding such other and further relief as this Court deems appropriate.

Respectfully submitted,

RODENHOUSE KUIPERS, PC


Date:  May 25, 2017 

/s/ C. Christopher Newberg
**C. Christopher Newberg (P79025)**
Attorneys for Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs
678 Front Ave., NW, Suite 176
Grand Rapids, MI 49504
PH: (616) 451-4000
Fax:(616) 451-4114
Email: Chris@rodenhouselaw.com